## AMES v. AMES. (IN SPECIAL TERM.)

A., in his lifetime, conveyed all his real estate equally to his two children, F. and O., his wife not joining. After his death, F. and O. each made deeds of their respective shares of the real estate to the widow, their mother, who for many years collected the rents, and claimed and enjoyed the property as her own.

Recently, F. brought a suit against the widow to set aside his deed and to recover his half of the property, and succeeded by a verdict of a jury finding that his deeds had never been delivered so as to give them effect. He also sought an account of one-half of the rents and profits while the widow had received them, which was ordered, but before the court had acted upon the report of the master, the widow died.

*Held,* that although the widow, claiming the fee, had not applied for dower as widow, she was not to be deprived of her share in the rents and profits, and while she was bound to account for the rents and profits, she was entitled to be credited in the account as widow with one-third of the net profits, on the principle that in seeking equity, the plaintiff must do equity.

That lands purchased by the widow and paid for, partly by the proceeds of other lands of the estate which she had sold, and partly by the rents and profits of the estate, were to be divided as lands of the estate so far as they were paid for by the proceeds of sales of lands of the estate, and to be distributed as personalty so far as they were paid for by the rents and profits.

Dan Ames, in his lifetime, conveyed to his two children, F. W. Ames and Olivia Hawes, all his real estate, his wife not joining in the deed. After the death of Dan Ames, both F. W. Ames and Olivia made deeds of their respective interests in the real estate to their mother, Mrs. Anne Ames, the widow, and the estate was managed for several years by them in the name of Anne Ames. But the deed of F. W. Ames, though put upon record by Mrs. Ames, has been found by a jury not to have been actually delivered so as to give it effect.

The old lady, being in possession under the evident belief that she was the legal owner, made no application for dower. Most of the rents were collected in her name, if not by her

in person. The real estate has been partitioned between plaintiff and Olivia Hawes, now Kater. The cause was referred to a master to state an account showing what moneys Mrs. Anne Ames or Mrs. Hawes had received from or on account of the estate between January 1, 1859, and June 1, 1870, the date of the report; and what amount she had disbursed on account of the estate; also, what had been received from the estate in the same time by the plaintiff, F. W. Ames, and disbursed. In stating this account, the master has placed all that was received by Anne Ames and Olivia on one side, and what was received by F. W. Ames, the plaintiff, on the other.

He makes the gross receipts by the defendants, Anne Ames and Olivia Hawes, $80,001.82, and their disbursements for the estate $35,731.65, leaving a net sum to be accounted for by them of $44,270.17.

He finds that the plaintiff had in the same time received $14,639.05, and had disbursed for the estate $2,293.23, leaving a net sum to be accounted for by him of $12,345.82.

Deducting this $12,345.82 received by the plaintiff from the sum of $44,270.17, received by the defendant, he finds a balance of $31,924.35, which he divided by two, and reports $15,962.17 as the balance due from the defendants to the plaintiff.

TAFT, J. It is claimed by the defendants that the master has erred in sundry large and in some small items, in which the report should be corrected, if it is not set entirely aside for general uncertainty and insufficiency. It is true that the fact that no books were kept by any of the parties, renders an account taken so long after the transactions themselves, and of which there was no record, unsatisfactory. The court, however, by making the order of reference, recognized its duty to make the attempt to have an account stated; and the master, by the testimony of the plaintiff and Olivia, together with the receipts for rents, as shown by the tenants, and the receipts kept by Mrs. Ames for moneys paid

out on account of the estate, or to the plaintiff, has been able to make a statement, which, if not complete, is probably true as far as it goes, and more satisfactory than was to have been expected. By using this statement, and the evidence, the court can make a more equitable decree than it could hope to make without it.

As to the item of presents made by the mother to the plaintiff, I do not find occasion to interfere with the conclusions of the master; nor do I find reason to change the finding of the master as to the 5-20 United States bond. The parties contradict each other as to the number of the bonds. The finding of the master is founded on as good reason as I could assign for any change I should make.

As to the rent of the Fourth street property, charged against the defendants at the rate of $1,500 per annum while they occupied it, after the plaintiff and defendants separated, it seems to be a full rent. The house has been since rented at a higher rate, and I can not say, from the testimony, that it is too much, and do not see my way to disturb the finding of the master on that point. I have a recollection that rents were low about that time. But I have no evidence to justify a change.

Another objection was raised, in argument, to the report, that the master refused to credit Anne Ames with about $7,164, amount applied by her to the payment of the mortgage on the Sharonville farm. I am satisfied from the evidence that the notes paid were the notes of Mrs. Kater, formerly Mrs. McMillan, which had been given by her for the balance of purchase money of the farm, her father having in his lifetime paid $2,500 on the purchase. On the other hand, the counsel for the plaintiff claim that not only is Mrs. Ames not to be credited with that money so paid on Mrs. Kater's purchase, but that Mrs. Kater is to be charged with the money so advanced on her account, because it was advanced before January 1, 1859, and not charged to Mrs. Ames. But the court, in ordering the statement of the account, limited the inquiry to the receipts and dis-

bursements subsequent to January 1, 1859, up to which time they had all lived together as one family, keeping no accounts of receipts and expenditures. Besides, it does appear from the statement of the plaintiff, who alone testifies on the subject, and from the papers themselves, that a principal part of the money was paid after January 1, 1859, and probably with money for which Mrs. Ames was charged in the account as stated. I conclude, therefore, that this part of the report of the master should stand.

As to the three pieces of property purchased by Mrs. Ames, and paid for partly by the proceeds of sales of land of the estate, and partly by the rents and profits, they are to be regarded in the division as real estate so far as they were purchased by the proceeds of the real estate sold, and so far as they were paid for by moneys arising from the rents and profits they are to be regarded as part of the rents and profits.

The master's report shows what part of the consideration was paid by proceeds of the sales of real estate, and what by the rents and profits.

In making this statement, the master makes no allowance to Mrs. Anne Ames on account of dower, or on account of the circumstances under which she forebore to apply for dower. This he was, perhaps, not authorized to do by the reference; and the question now comes properly before the court, whether any such allowance shall be made.

The effect of requiring Mrs. Ames to account for all the receipts necessarily makes her insolvent, unless she had separate estate independent of her husband, except so far as she may have had property or income from Olivia's half of the estate. Nothing would be left for her own support, unless she should be allowed a widow's share of the income.

Complaint is made by the defendants that the debits of the widow, Anne Ames, and Olivia have been confounded by the master, who has not distinguished what each of the

defendants have received from, or on account of the estate. It would have been more satisfactory to have had' a distinct statement of the moneys received by each. But the evidence may not be such as to render that possible, and it is hardly probable that such evidence can be obtained.

In the view I take of the case, however, the finding of the master is sufficiently specific to enable the court to render a decree on this point. I think that upon the pleadings and evidence in this case, as it stood when Mrs. Ames died, she was entitled in equity to an allowance out of those receipts equivalent to dower, that is, to one-third of the net income of the real estate for the time covered by the report. This was upon the principle that the plaintiff, in seeking equity from her, must do equity. A court of equity could not consent to charge her for all her receipts, under the circumstances I have stated, and at the same time allow her nothing, as the widow of Dan Ames.

The question is not without difficulty. In Ohio, dower commences with its assignment, and prior to the act of 1863, S. & S. 311, a suit in chancery for dower abated by the death of the widow, so that all right of dower was lost. *Miller* v. *Woodman*, 14 Ohio, 520.

By the act of 1863, it was provided that such a suit should not abate, but might be prosecuted in the name of her representatives. Nevertheless, in this State the widow's recovery upon a petition for dower reaches only the income since the filing of the petition.

But a widow is not shut· out from the benefit of the same equitable considerations as other parties in a court of equity. The fact that Mrs. Ames, claiming the fee simple, did not by answer ask for dower, would not prevent a court of equity from protecting her interest as widow in the distribution of assets, as was held in *McDonald* v. *Aten*, 1 Ohio St. 296.

I am satisfied that if this case were in England, the court would not allow the heirs to hold the widow to account for

all the income of the estate, under the circumstances of this case, without compelling them to allow the widow one-third of the net income.

In the case of *Duke of Hamilton* v. *Mohun,* 1 P. Wms. 118, where the duke had agreed with his wife's mother, before marriage, that after marriage he would release her from all accounting for the mesne profits of his wife's estate, and the mother did not assert her right of dower in the estate, on the idea (as we may fairly infer) that she was released from giving an account of the mesne profits of the estate, which had been in the mother's hands as trustee, the court, after holding void the original agreement to release the mother from liability to account, nevertheless gave her representative, she being dead, one-third of the yearly income. Lord Chancellor Hardwicke, in deciding the case, said: " As to the want of a formal assignment of dower, that is nothing in equity, for still the right in conscience is the same; and if the heir brings a bill against the mother for an account of profits, it is most just that a court of equity should, in the account, allow a third of the profits for the right of dower."

The finding of the jury, by which the deeds under which Mrs. Ames remained in possession and took care of the property were set aside, as not having been valid for want of delivery, did not find fraud. Mrs. Ames supposed that she was the owner of the fee, and it was long before it seems to have been disputed by the pliantiff. They lived together for a time, and the estate was taken care of, and the moneys received and paid on account of the estate in her name.

· There is no complaint that the income of the estate has been wasted. Being thus in possession, and taking care of the income and the property, as the owner, she has made no application for dower. She was mistaken as to her title, and her son came into a court of equity to call her to account for the rents collected, as he had a right to do. If the account had been taken and had gone into a decree in her lifetime, she would, in equity and good conscience, have been entitled to be allowed her right as widow. I think that it

would have been the duty of the court to require such an allowance in stating the account. This, under the circumstances, would be the equity which the heirs seeking an account should be compelled to do. The rule of damages in suits for dower may be different in England from our rule in Ohio, running back, in England, to the time of the husband's death. I do not think that that difference affects the application of the principles of equity to this case.

But it was claimed that the death of Anne Ames, before the rendition of the decree, put an end to that equity, so that her will, giving all her property and effects to Olivia, was ineffectual to pass it.

I regard the equitable right of Anne Ames to have arisen out of her relation to the family and estate, and out of the circumstances under which she collected the rents and took care of the property, and that right was as much vested in equity as if it had been a legal estate, and can not now be disregarded. I regard the case of *Duke of Hamilton* v. *Mohun* an authority to this effect. Taking the statement of the master in all other respects to be correct, the result is, in general, to divide the net income of the estate, for the time specified, into three parts, and to give to Mrs. Kater one-third in her own right, and one-third under her mother's will, and the other third to the plaintiff.

On the whole case, I conclude to affirm the finding and conclusions of the master as to items, with the exception that the grand result is to be modified by crediting the estate of Anne Ames with one-third of the net income. I have not attempted to state the balance which will be coming to the plaintiff under the decree drawn upon this principle. Nor do I know whether it will be necessary to refer the case back to the master. It is probable that the counsel, acting upon the principles of this opinion, and aided by the statement and findings of the master, can frame the decree without further reference.